# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | | |
|---|---|---|
| ELIZABETH A. NELSON, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | 1:10-cv-00032-JAW |
| SOCIAL SECURITY ADMINISTRATION COMMISSIONER, | ) ) ) ) | |
| Defendant | ) | |

## RECOMMENDED DECISION

The Social Security Administration found that Elizabeth Nelson, 44 years old as of the date of alleged onset of disability, has severe impairments consisting of obesity, fibromyalgia, depression, and anxiety, but retains the functional capacity to perform substantial gainful activity existing in significant numbers in the national economy, resulting in a denial of Nelson's application for disability benefits under Title II and Title XVI of the Social Security Act. Nelson commenced this civil action to obtain judicial review of the final administrative decision, alleging errors at Steps 2, 4 and 5 of the sequential evaluation process. I recommend that the Court vacate and remand.

## Standard of Review

The standard of review is whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. Richardson v. Perales, 402 U.S. 389, 401 (1971); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not

conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).

**The Administrative Findings**

The Commissioner's final decision is the August 28, 2009, decision of Administrative Law Judge Katherine Morgan[1], as amended by the Decision Review Board in its decision dated November 25, 2009. (Docs. Related to Admin. Process, Doc. No. 10-2, R. 4-21.[2])

The Administrative Law Judge found that Elizabeth Nelson meets the insured status requirements of Title II through September 30, 2008, and has not engaged in substantial gainful activity since June 15, 2006, the date of alleged onset of disability, thereby checking off Step 1 of the sequential evaluation process. (Id., R. 12, Findings 1, 2.)

At Step 2, the Judge found that the following severe physical impairments are present: obesity, fibromyalgia, depression, and anxiety. (Id., Finding 3.)

At Step 3, the Judge found that this combination of impairments would not meet or equal any listing within the Commissioner's Listing of Impairments. (Id., R. 15, Finding 4.) Nelson does not press a contrary argument here.

At Step 4, the Judge made a residual functional capacity finding that Nelson could engage in light-exertion, unskilled work, subject to a further restriction on certain postural activities that can only be performed on an occasional basis. (Id., R. 17, Finding 5.) From there, the Judge concluded that the limitation to unskilled work prevented Nelson from returning to her past work, which amounted to skilled work as a mechanical designer. (Id., R. 19, Finding 6.)

At Step 5, the Judge reasoned that Nelson is reasonably regarded as not disabled under

---

[1] The decision is signed by Administrative Law Judge Guy Fletcher "for" Katerine Morgan. (R. 21, Doc. No. 10-2, Page ID No. 73.)

[2] The Commissioner has consecutively paginated the entire administrative record ("R."), which has been filed on the Court's electronic docket in a series of attachments to docket entries 10 and 13.

the framework of the Commissioner's medical/vocational guidelines.  (Id., R. 20, Finding 10.)

On review, the Decision Review Board adopted the Judge's findings and offered some additional assessment of the effects of Nelson's obesity.  The Board also expressly indicated its agreement with the Judge's finding that the mental health records reflect a capacity for unskilled work and that the treatment records generated by Dr. Staples, and his contrary opinion about disability, are outweighed by the longitudinal record.  (Id., R. 6.)

## Discussion of Plaintiff's Statement of Errors

Nelson argues:  (1) that her overall degree of limitation was enough to require testimony from a vocational expert at Step 5 and precluded resort to a Guidelines "framework" decision;  (2) that Dr. Staples's opinion should have received controlling weight on the degree of her mental capacity;  (3) that the Judge judged matters entrusted to the experts in the course of her residual functional capacity finding;  (4) that the Commissioner's credibility assessment related to fibromyalgia pain is not supported by substantial evidence;  and (5) that the Commissioner erred by omitting carpal tunnel syndrome from her discussion. (Statement of Errors at 5-6, Doc. No. 13.)  I address the third, fourth, and fifth points of error in reverse order, without reaching the first two.  The third point of error calls for remand.

**A.     Wrist functionality and carpal tunnel syndrome**

Nelson points to evidence in her medical records of "mild carpal tunnel syndrome" having a duration of more than one year.  (Statement of Errors at 5-6, citing primary care treatment notes, R. 289, 293, 395, 453 ("assessed carpal tunnel syndrome, left, mild as comment only - Fluke, MD") and notation of her subjective report of numbness in left hand, R. 354, 387, 401, 409.)  Nelson describes her carpal tunnel syndrome (CTS) as "severe," which suggests an allegation of a step 2 error, but focuses her allegation of error on the fact that a CTS- related

3

limitation was not factored into the Judge's residual functional capacity finding, whether or not it was severe for step 2 purposes. (Id. at 6.) At oral argument, the Commissioner argued that there is no objective medical evidence of any CTS-related occupational restriction.

At Step 2, the Commissioner must consider the severity of a claimant's impairments and it is the claimant's burden to prove the existence of a severe, medically determinable, physical or mental impairment or severe combination of impairments that meets the durational requirement of the Social Security Act. 20 C.F.R. § 416.920(a)(4)(ii). As for the severity requirement, the claimant's burden at Step 2 is a *de minimis* burden, designed simply to screen out groundless claims. McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1123 (1st Cir. 1986). When a claimant produces evidence of an impairment, the Commissioner may make a determination at Step 2 that the impairment is not severe only when the medical evidence "establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." Id. at 1124 (quoting Social Security Ruling 85-28). At Step 2, only medical evidence may be used to support a finding that an impairment is severe. 20 C.F.R. § 416.928.

The Commissioner asserts that there is no medical evidence of a severe impairment in the left hand. The medical records cited by Nelson do not include a finding of more than a slight abnormality. The chart document for a July 20, 2009, office visit notes "weak grip" in both upper extremities based on physical exam. (Med. Records Part 2, Doc. No. 10-8, R. 452.) However, a comparable chart document for a September 4, 2008, visit records "normal ROM and strength, no joint enlargement or tenderness" for both upper extremities. (Id., R. 395.) The musculoskeletal system report refers to a history of present illness narrative, which makes no

mention of wrist pain or CTS.  (Id., R. 389-90.)  The chart document for a June 9, 2008, visit is the same.  (Med. Records Part 1, Doc. No. 10-7, R. 286-88.)  A Disability Determination Services consultative examination report dated February 1, 2008, reflects that Nelson's allegations of wrist pain are an aspect of her broader subjective symptoms of diffuse pain rather than the product of any localized neurological impairment.  No occupationally significant restriction was found in regard to carrying, lifting, or handling objects.  (Id., R. 260-62 (Charkowick, DO).)  The Judge reviewed these records and permissibly regarded this alleged symptom to be part of Nelson's broader complaint of diffuse, migratory pain.  (Docs. Related to Admin. Process, R. 14.)  As there is no clear finding of CTS, this perspective on the record was not error.  Even if there were error in this limited regard at Step 2, that error is harmless unless Nelson can demonstrate that inclusion of the impairment would have changed the outcome of her claim at a later stage of the sequential evaluation process.

At Step 4 of the sequential evaluation process, the Commissioner must assess the claimant's residual functional capacity (RFC).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  The burden of proof rests with the claimant to prove the limitations that factor into the Commissioner's residual functional capacity finding.  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Clarification of Rules Involving Residual Functional Capacity Assessments*, 68 Fed. Reg. 51,153, 51,157 (Aug. 26, 2003).  Nelson not only fails to direct the Court to any clear finding of carpal tunnel syndrome, she also fails to identify opinion evidence that carpal tunnel syndrome impedes her ability to work.  The Disability Determination Services consulting physical RFC assessments reflects that Dr. Richard Chamberlin, M.D. reviewed the medical evidence of record in February of 2008, including evidence associated with diffuse pain and Dr. Charkowick's consulting examination.  He noted that Nelson's alleged level of pain and

discomfort could not be explained on the basis of medical evidence. (Med. Records Part 1, R. 270.) Thereafter, on reconsideration in June of 2008, Dr. Robert Hayes reviewed the medical records, including the information related to weak grip bilaterally, concluded that no manipulative limitations were demonstrated, and similarly noted that the records could not explain Nelson's subjective experience of pain. (Med. Records Part 2, R. 379, 382-83.) Nelson's statement of error concerning her wrists does not call for remand. Given the state of the record, wrist numbness or pain was appropriately relegated to a credibility finding on generalized allegations of diffuse muscle and joint pain associated with fibromyalgia.

**B.**     **Diffuse musculoskeletal pain**

According to Nelson, her allegations concerning the limiting effect of her diffuse musculoskeletal pain (fibromyalgia) deserve more credit. When it comes to judging the credibility of a claimant's subjective report of pain, an administrative law judge's discretion is considerable. "Issues of credibility and the drawing of permissible inference from evidentiary facts are the prime responsibility of the [Commissioner]." Rodriguez v. Celebrezze, 349 F.2d 494, 496 (1st Cir. 1965). The administrative law judge is assigned the task of making the credibility determination, 20 C.F.R. §§ 404.1529(a), (c)(1), (c)(4), 416.929(a), (c)(1), (c)(4), and in doing so she has leeway to consider what the "entire case record" reveals and what reasonable inferences it supports. Id.; see also SSR 96-7p, 1996 SSR Lexis 4, * 6, 1996 WL 374186, *2 ("[W]henever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record."). The Court does not have authority to make a credibility finding *de novo* and, therefore, cannot overturn the finding just because it might draw

different inferences from the record or harbors greater doubts about a claimant's functional capacity. Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991).

According to Nelson, the Judge was required to find substantial limitations secondary to fibromyalgia in his residual functional capacity finding because, at Step 2, he found that fibromyalgia was a severe impairment. (Statement of Errors at 4-5.) She cites Johnson v. Astrue, 597 F.3d 409 (1st Cir. 2009). In Johnson, the First Circuit held that the Commissioner's assessment of the plaintiff's fibromyalgia as non-disabling was flawed and required reconsideration. Id. at 410. The plaintiff's medical records included an RFC assessment completed by her treating rheumatologist and the flaw in the administrative decision was described as "unpersuasive reasons" for giving the treating doctor's opinion little weight. Id. at 411. Specifically, the administrative law judge treated three office visits in three months as too limited to be reliable, without explaining why this would be so. Id. The Court observed that a lay person would not find it obvious that three visits in three months would be less than sufficient treatment to offer an informed and reliable opinion. Id. In addition, the Court faulted the administrative decision for misreading the record and placing too much significance on the fact that trigger point injections offered some relief. Id. Third, the Court found it unpersuasive to say that an ability to participate in physical therapy for less than an hour a few days a week suggested an ability to perform substantial gainful activity, and certainly did not call into question the doctor's opinion that the plaintiff lacked the residual functional capacity for such work. Id. 412. Finally, the Court rejected the notion that a rheumatologist's opinion about the limiting effects of a patient's fibromyalgia should be discounted simply because it relies on the patient's subjective report of symptoms and an evaluation of trigger points. Id. The Court also observed that the opinions of two consulting, non-examining experts did not provide a

substantial evidentiary basis to override the rheumatologist's opinion, where one failed even to acknowledge the existence of the fibromyalgia diagnosis, though it was of record, and the other discounted the significance of the diagnosis based exclusively on the absence of objective findings and failed to discuss the rheumatologist's RFC assessment. Id. 412-13. From there, the Court picked apart the administrative law judge's credibility contention that the plaintiff had failed to pursue appropriate treatment or engaged in activities of daily living that exceeded the rheumatologist's RFC assessment. Id. 413-14. In closing, the Court observed that "once the ALJ accepted the diagnosis of fibromyalgia, she also *had no choice* but to conclude that the claimant suffered from the symptoms usually associated with such condition, unless there was substantial evidence in the record to support a finding that claimant did not endure a particular symptom or symptoms." Id. at 414 (emphasis in original) (quotation marks and citation omitted).

This case is a shadow of Johnson. Nelson is able to point to a history of diffuse, migratory joint pain (athralgia) and medical signs associated with multiple tender joints. (Med. Records Part 2, R. 397-99, 447-49.) However, there is no medical opinion from a treating source that addresses the relationship between Nelson's fibromyalgia symptoms and the exertional and other demands of full-time employment. The only treating source opinion in the record related to Nelson's residual functional capacity is a mental RFC form completed by Dr. Richard Staples, Ph.D. That opinion is oriented toward the mental impact of living with chronic pain and fatigue, along with reduced self-esteem associated with past failures in the work place, rather than toward physical limitations. Consequently, unlike Johnson, Nelson has relied on Disability Determination Services to translate her medical records into the language of physical residual functional capacity. There are three consulting opinions in the record that address this concern. The first is a Consultative Examination Report related to a physical examination in early

February 2008 by Dr. Robert Charkowick, DO. (Med. Records Part 1, R. 260.) The second is a physical RFC assessment performed February 14, 2008, by Dr. Chamberlin. (Med. Records Part 1, R. 264.) The third is another physical RFC assessment performed by Dr. Robert Hayes, DO, on June 26, 2008. (Med. Records Part 2, R. 382.) These three consultants all evaluated Nelson's allegations and her medical records for purposes of determining the limiting effects of her experience of diffuse pain, although it appears that Dr. Charkowick and Dr. Chamberlin did so before Nelson had received a diagnosis of fibromyalgia from a treatment provider.[3] In any event, Dr. Hayes performed his assessment cognizant of the fact that an April 2008 treatment note reported suspicion of "a degree of fibromyalgia." (Id., R. 383.) None of these examiners assessed a disabling degree of pain-related impairment. With the exception of Dr. Charkowick, they allowed for some exertional limitation, additional limitations in the ability to endure prolonged sitting or standing, and occasional postural limitations. Dr. Charkowick did not fill out the RFC form, but indicated that he could discern no restrictions related to work activities and opined that Nelson could return to her past work.

The Commissioner argued at oral argument that there was no reversible error in regard to the fibromyalgia issue because there was no assessment offered by a treating source in relation to the residual functional capacity issue, unlike in <u>Johnson</u>, and because the Judge acknowledged the new diagnosis of fibromyalgia and allowed for it in her opinion. I agree with the Commissioner that the absence of a countervailing RFC assessment by a treating source puts this case in a category different from <u>Johnson</u>. Ultimately, in order to justify a more restrictive RFC

---

[3] There are treatment notes related to a December 23, 2008, office visit in which fibromyalgia is assessed. (Med. Records Part 2, R. 400.) The history recounted in this note states that fibromyalgia syndrome (FMS) was clinically diagnosed in February 2008. The February record is at page 398 of the Record. Drs. Charkowick and Chamberlin did not have the benefit of this diagnosis, according to their itemization of the medical records they considered, but Dr. Hayes did. Despite the additional label, Dr. Hayes agreed with Dr. Chamberlin's RFC assessment.

assessment than those offered by the consulting physicians, Nelson must rely on her own report of symptoms, because the treatment records do not speak in terms of residual functional capacity. Moreover, the mere fact that the Judge identified Nelson's fibromyalgia pain as a severe impairment for purposes of Step 2 does not mean, contrary to Nelson's contention, that this impairment necessarily causes greater limitation than what has been found by the consulting examiners. "Severe," for step 2 purposes, means more than slight. It does not mean totally disabling. McDonald, 795 F.2d at 1123-24.

This leads, of course, to the credibility assessment. Unlike in Johnson, Nelson has not pointed to logical flaws in the Judge's credibility discussion. She does not really attack it analytically at all. Instead, she has pointed to evidence that might tend to support her allegations, such as the fact that she treated with a chiropractor for an extended period, received physical therapy, and was found to have multiple tender joints. In order for this kind of argument to carry the day, the Court would need to conduct a *de novo* credibility analysis, which is not the proper standard. Ortiz, 955 at 769. I decline the invitation to perform that task. Nor will I conduct a comprehensive assessment of the medical records, as Nelson has not offered any travel advice as to why such a review is likely to divulge analytical error in the Judge's credibility assessment. In sum, Nelson's fibromyalgia-related challenge does not afford a basis for remand.

**C.      Judging matters entrusted to experts**

The Judge included severe depression and anxiety among Nelson's step 2 impairments. Her decision tracks the history of this illness and the treatment modalities involved (medication and therapy). As for the limiting effects of this condition, the Judge found at Step 3 of her sequential analysis that Nelson has "no more than mild" limitations in activities of daily living and in social functioning, "moderate" difficulties maintaining concentration, persistence, and

pace, and that the record did not divulge any episodes of decompensation. (Docs. Related to Admin. Process, R. 16-17.) From there, the Judge found at Step 4 of her analysis that Nelson's moderate limitation maintaining concentration, persistence, and pace diminished her residual functional capacity by precluding skilled work. (Id., R. 17.)

Nelson alleges error in two respects. First, she argues that the finding of a moderate impairment associated with concentration, persistence, and pace necessarily translates into a residual functional capacity for less than the full range of unskilled work. (Statement of Errors at 1-2, citing the recommended decision adopted by the Court in Maldonado v. Astrue, Civ. No. 08-412-B-W, 2009 WL 1885057, 2009 U.S. Dist. Lexis 57890.) Second, Nelson complains that Dr. Staples's opinion of marked limitations deserved controlling weight. (Id. at 2-4.) The first argument carries the day because there is no expert opinion in the record that supports the Judge's assessment of the degree of Nelson's concentration, persistence, and pace impairment.

The record reflects that three psychiatric review techniques (PRTs) were performed during the processing of Nelson's claims. The first PRT, dated February 21, 2008, was performed by David R. Houston, Ph.D., on behalf of Disability Determination Services. (Med. Records Part 1, Ex. 9F.) Dr. Houston opined that Nelson's medical records reflected a non-severe affective disorder imposing only mild restrictions in the three areas of mental functioning and involving no decompensative episodes. (Id., R. 272, 282.) The second PRT, dated June 18, 2008, was performed by Scott Hoch, Ph.D., also on behalf of Disability Determination Services. (Med. Records Part 2, Ex. 13F.) Dr. Hoch's opinion mirrored Dr. Houston's. (Id., R. 362, 372.) The third PRT, dated April 14, 2009, was performed by Richard Staples, Ph.D., a treating source. (Id., Ex. 21F.) Dr. Staples diagnosed both an affective disorder and an anxiety disorder, opined that they were manifest at listing-level severity, and imposed moderate difficulties in social

11

functioning, marked deficiencies in concentration, persistence, and pace, and caused decompensative episodes to a marked degree. (Id., R. 419, 422.) By virtue of these findings, Dr. Staples was the only expert to perform a mental RFC assessment. (Id., Ex. 22F.) He opined that the mental symptoms would, among other things, markedly interfere with attention and concentration over extended periods, would markedly impair the ability to perform within a schedule and maintain attendance and punctuality, and would markedly interfere with completion of a normal work day and workweek. (Id., R. 423-24.)

In her decision, the Judge found that more recent medical records ("counseling evidence") demonstrated moderate limitation in the concentration, persistence, and pace category. (Docs. Related to Admin. Process, R. 16.) In other words, the PRTs performed by the Disability Determination Services consulting physicians were outdated by new developments in the medical records. The Judge's finding of a moderate limitation in concentration, persistence, and pace (however reluctantly made) is inconsistent with both the Disability Determination Services PRTs and with Dr. Staples's PRT and mental RFC opinion. This is a serious red flag because it means there is no expert opinion to undergird the Judge's residual functional capacity finding. The Decision Review Board's blessing to this approach does not fill the void. Application of the Guidelines at Step 5 on this record is reversible error.

As recited above in the standard of review, an ALJ's findings are not conclusive when they arise from "judging matters entrusted to experts." Nguyen, 172 F.3d at 35. I am not persuaded that a lay assessment is sufficient in this case to counter the expert opinion offered by Dr. Staples. This Court has repeatedly indicated that it will scrutinize the record very closely when an administrative law judge assesses a moderate limitation in mental functioning without translating it into something greater than a limitation to unskilled work, at least where there is no

expert RFC assessment supporting that finding. This has been observed in, among other recommended decisions, the recommended decisions adopted by the Court in Babcock v. Astrue, Civ. No. 09-630-B-W, 2010 U.S. Dist. Lexis 112998, *11-13 (D. Me. Oct. 20, 2010), and Maldonado v. Astrue, Civ. No. 08-412-B-W, 2009 U.S. Dist. Lexis 57890, *13-16, 2009 WL 1885057, *6 (D. Me. June 30, 2009). Because the Judge's RFC finding lacks substantial support in the record, it cannot support the Judge's Guidelines decision at Step 5.[4]

**Conclusion**

For the reasons set forth in the foregoing discussion, I RECOMMEND that the Court VACATE the Administrative Law Judge's decision and REMAND for further proceedings consistent with the foregoing discussion.

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

December 28, 2010

---

[4] I am somewhat baffled as to why the Commissioner would not spare the Court having to repeat itself overmuch on an issue already squarely addressed in Maldonado and Babcock. This case is assigned to the same judge who adopted the two prior recommendations from another magistrate judge and the result is not materially distinguishable. I appreciate the care with which the Commissioner scrutinizes appeals and selectively moves to remand many cases. I would hope that this case did not proceed to oral argument before me in hopes of a different outcome regarding remand. If the commissioner wants me to deviate from prior precedent in an assigned judge's rulings, the issue should at least be highlighted and the erroneous or distinguishing factors explained at oral argument. Maldonado was cited in the first statement of error, even if Babcock was not cited.